IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,          )
ex rel. HAILE KIROS NICHOLSON,     )
                                   )
            Plaintiff,             )
                                   )
     v.                            )     1:17CV34
                                   )
MEDCOM CAROLINAS, INC., JEFF       )
TURPIN, and JOHN DOES (1-50)       )
INCLUSIVE,                         )
                                   )
            Defendants.            )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

     Before the court is the Motion to Dismiss, (Doc. 15), for
failure to state a claim filed by Defendants MedCom Carolinas,
Inc., and Jeff Turpin. Plaintiff Haile Kiros Nicholson
("Relator") is a qui tam relator proceeding, pursuant to
31 U.S.C. § 3730(b), against Defendants for violations of the
False Claims Act ("FCA"), Anti-Kickback Statute ("AKS"), and
North Carolina's False Claims Act ("North Carolina FCA"). The
United States declined to intervene. Relator alleges that
Defendants paid commissions to nonemployee contractors to induce
referrals of medical services, an act that allegedly violated
the AKS. Since Defendants were required to certify their

compliance before submitting reimbursement claims to the government, this AKS violation is the predicate for the alleged FCA violations. Defendants argue that Relator has not alleged any FCA or AKS violations with the particularity required by Fed. R. Civ. P. 9(b). For the reasons stated herein, the court agrees with Defendants and will therefore dismiss Relator's Complaint.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The following facts are taken from the Complaint as true.

### A.    Factual Background

Relator is a sales employee with Integra, a nonparty company that manufactures skin graft devices. (Complaint ("Compl.") (Doc. 1) ¶¶ 5, 14.) Defendants include MedCom Carolinas, Inc., Jeff Turpin, and John Does (1-50) Inclusive.

(Id. ¶¶ 6-8.)[1] MedCom Carolinas, Inc. ("MedCom") is a corporation formed under the laws of North Carolina with its principal place of business there are well. (Id. ¶ 6.) The Complaint does not allege what kind of business MedCom is, but it is somehow connected to the medical field. (See id. ¶¶ 5, 16.) Defendant Jeff Turpin is a resident of Durham, North Carolina; he owns MedCom "in whole or in part.". (Id. ¶¶ 7, 16.) The Complaint does not allege what specific position Turpin has with MedCom. Defendants John Does (1-50) Inclusive are "unknown to Plaintiffs, but include those co-conspirators who engaged in prohibited conduct described" in the Complaint. (Id. ¶ 8.) John Does may be individuals, corporations, associates, or otherwise. (Id.)

---

[1] The Complaint and Relator's response sometimes refers to "MedCom, Inc." and "MedCom LLC." The only named Defendant is MedCom Carolinas, Inc. (See Compl. (Doc. 1) at 1; Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 16) at 1 n.1; Relator's [Plaintiff's] Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Rel.'s Resp.") (Doc. 20) at 3.) It is not clear from the Complaint or briefing who or what MedCom LLC is. Relator's only factual allegations related to the underlying scheme consistently reference MedCom LLC. To the extent Relator refers to "MedCom, Inc.," the court will construe that as shorthand reference to MedCom Carolinas, Inc., the named Defendant. (See Compl. (Doc. 1) ¶ 6.)

Relator's allegations center on the use of contract employees and are limited to four instances in the Complaint.[2] First, Relator alleges that "MedCom LLC utilized 1099 reps to generate referrals" for federal healthcare programs, and that "these representatives were paid in whole or in part for furnishing items covered by federal healthcare programs and received commissions based on the same including PriMatrix and Integra Dermal Replacement Therapy." (Id. ¶ 5.) Second, Relator later alleges that "Integra utilized 1099 nonemployee reps to generate referrals for Medicare/Medicaid and other federal healthcare program patients . . . . [T]hese representatives were paid by Jeff Turpin who owns MedCom LLC . . . ." (Id. ¶ 16.) Third, Relator further alleges that "Defendant companies' payments to nonemployee reps caused violations of the state and federal anti-kickback statues [sic] . . . ." (Id. ¶ 18.) Fourth, Relator alleges that "MedCom LLC has routinely violated the

_____

[2] The Complaint consistently refers to the Integra sales representatives in question as "1099 employees," apparently referring to IRS Form 1099-MISC that is used to report income paid to nonemployees. Frequently Asked Questions: What's the difference between a Form W-2 and a Form 1099-MISC?, IRS, https://www.irs.gov/faqs/small-business-self-employed-other-business/form-1099-misc-independent-contractors/form-1099-misc-independent-contractors (last visited Jan. 7, 2020).

Anti-Kickback Law . . . through the use of the 1099 nonemployee representatives." (Id. ¶ 19.)

Relator alleges he was made aware of the scheme because, in his role as a sales employee for Integra, he was familiar with the healthcare facilities where the products in question were used and even "in the O.R. or clinic during a time patients were treated." (Id. ¶ 5.) Relator also engaged in some kind of "national competition[]" with the Integra 1099 nonemployees. (Id. ¶ 16.)

The products involved in these sales included one manufactured by Integra, Integra Dermal Replacement Therapy grafts, and "Primatrix,"[3] another skin-substitute used for grafts. (Id. ¶¶ 14-15.) The Complaint does not allege who manufactures Primatrix. (See id. ¶ 15.)

With respect to the alleged fraudulent scheme, it is helpful to quote, verbatim, from the Complaint the paragraphs that lay out the scheme:

> 16.  Relator's employer Integra utilized 1099
> nonemployee reps to generate referrals for
> Medicare/Medicaid and other federal healthcare program
> patients in violation of the anti-kickback statute.
> Specifically, these representatives were paid by Jeff
> Turpin who owns MedCom LLC in whole or in part for

---

[3] The Complaint variously refers to the product as "Primatrix" and "PriMatrix." The court will refer to it as Primatrix when not quoting Relator.

- 5 -

furnishing items covered by federal healthcare
programs and received commissions based on the same
including PriMatrix and Integra Dermal Replacement
Therapy. Relator learned of this scheme based upon his
employment with Integra whereby these representatives
engaged in national competitions with the full-time
employees. Relator spoke with treating physicians,
reimbursement personnel, and also received
compensation for these 1099 nonemployee's role in
generating these sales. <u>For example, on or about Nov
2016, Patient T.W. received an Integra Dermal
Replacement Therapy graft furnished by Relator's 1099
counterpart/sales representative Holloway whereby VA
care benefits paid for this graft utilized by Dr.
Phillips in excess of $3,000.00.</u>

17. As a result of the conduct of all Defendants
alleged herein, Defendants submitted or caused to be
submitted thousands of false claims to the United
States. Consequently, Defendants received or caused
losses of millions of dollars from the United States
to which they were not lawfully entitled.

18. Defendant companies' payments to nonemployee
reps caused violations of the state and federal anti-
kickback statues [sic], and all claims submitted to
the Medicaid programs in those States as a sequel to
[] those payments were false claims.

19. Medcom LLC has routinely violated the Anti-
Kickback Law, 42 U.S.C. § [1320a-7b], which prohibits
a person or firm from providing or soliciting
remuneration as an inducement for referrals of
Medicare, Medicaid, or other healthcare program
patients through the use of the 1099 nonemployee
representatives.

(<u>Id.</u> ¶¶ 16-19 (emphasis added).)

**B.  <u>Procedural History</u>**

Relator brought this qui tam action on behalf of the United

States, alleging four violations of federal law and one

violation of North Carolina law. Relator alleges that Defendants were required to certify their compliance with federal laws before submitting reimbursement claims to government healthcare programs. (Id. ¶¶ 11, 12, 13.) Since Defendants allegedly violated the AKS, this certification was false, and each claim submitted was also false. Therefore, according to Relator, each claim presented to the government for repayment for those products was an FCA violation in addition to an AKS violation. (See id. ¶¶ 24, 30, 34.)

Relator's first count alleges Defendants violated the FCA when they presented false claims for repayment of the medical products provided, a violation of 31 U.S.C. § 3729(a)(1)(A). (Id. ¶¶ 20–26.) Count Two alleges that Defendants violated the FCA, 31 U.S.C. § 3729(a)(1)(B), by maintaining and presenting false records and statements. (Id. ¶¶ 27–31.) Count Three alleges that Defendants conspired to submit these false claims in violation of 31 U.S.C. § 3729(a)(1)(C). (Id. ¶¶ 32–35.) Count Four alleges a standalone AKS violation by Defendants in the form of illegal commission schemes, a violation of 42 U.S.C. § 1320a-7b. (Id. ¶¶ 36–39.) Count Five alleges violations of North Carolina's FCA. (Id. ¶¶ 40–47.)

The United States elected to decline intervention. (Doc. 7.) After the government declined to intervene, the Complaint

was unsealed to allow Relator to serve all Defendants if he chose to proceed. (Doc. 8.) Relator elected to proceed, and Defendants subsequently filed the present Motion to Dismiss. (Doc. 15.) Defendants moved to dismiss Count Four pursuant to Fed. R. Civ. P. 12(b)(1), since no private right of action exists for an AKS violation. (Id.) Defendants moved to dismiss Counts One through Three under Rules 12(b)(6) and 9(b). (Id.) Finally, Defendants moved to dismiss Count Five for lack of subject matter jurisdiction. (Id.)

Defendants filed a brief in support of their motion to dismiss, (Doc. 16), Relator responded, (Doc. 20), and Defendants replied, (Doc. 22). The motion is ripe for ruling. For the reasons stated herein, the court will grant Defendants' motion to dismiss as to Counts One through Four and decline to exercise its supplemental jurisdiction over Count Five.

## II.  ANALYSIS

Defendants move for dismissal under different rules. The court will briefly begin with Count Four, the standalone AKS violation, which Defendants move to dismiss under Rule 12(b)(1). The court will then turn to Counts One through Three and the appropriate 9(b) analysis. Finally, the court will briefly explain its rationale for not exercising its supplemental jurisdiction over Count Five.

## A.    Count Four: Standalone AKS Violation

Count Four alleges a standalone violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. (Compl. (Doc. 1) ¶¶ 36-39.) Defendants argue that the AKS does not provide for "a private qui tam right of action." (Defs.' Br. (Doc. 16) at 8.) Relator concedes that there is no private right of action under the AKS. (Rel.'s Resp. (Doc. 20) at 1 n.1.)

Courts "should dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can be based . . . ." McLaughlin v. Safway Servs., LLC, 429 F. App'x 347, 348 (4th Cir. 2011) (per curiam) (citation omitted); see also Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) (noting that subject matter jurisdiction does not exist if plaintiff fails "to allege facts upon which subject matter jurisdiction can be based"). A challenged plaintiff "bears the burden of persuasion" in defending subject-matter jurisdiction. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). If a plaintiff does not have standing to bring a cause of action, the suit is properly dismissed under Rule 12(b)(1) for lack of jurisdiction. See, e.g., Griffin v. Dep't of Labor Fed. Credit Union, 912 F.3d 649, 652 (4th Cir. 2019); Smith v. Frye, 488

F.3d 263, 272 (4th Cir. 2007); NC RSOL v. Boone, 402 F. Supp. 3d 240, 254 (M.D.N.C. 2019).

The AKS is a "federal criminal statute[s] without a private cause of action." United States ex rel. Michaels v. Agape Senior Cmty. Inc., C/A No. 0:12-cv-03466-JFA, 2013 WL 6383085, at *3 (D.S.C. Dec. 5, 2013) (citing Donovan v. Rothman, 106 F. Supp. 2d 513, 516 (S.D.N.Y. 2000) ("There is no private cause of action to redress violations of the federal anti-kickback statute, 42 U.S.C. § 1320a–7b(b), the infraction of which is a crime.")); Gaalla v. Citizens Med. Ctr., Civil Action No. V-10-14, 2010 WL 2671705, at *3 (S.D. Tex. June 30, 2010) (collecting cases holding the same). If there is no right of action, then standing is not present. See, e.g., Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 382 (1958); Crawford v. Adair, Civil Action No. 3:08CV281, 2008 WL 2952488, at *1–2 (E.D. Va. July 29, 2008).

The burden is on Relator to allege facts supporting this court's jurisdiction. Williams, 50 F.3d at 304. Relator concedes that there is no private right of action under the AKS. (Rel.'s Resp. (Doc. 20) at 1 n.1.) Based on the precedent cited above, the court agrees. Realtor has no standing as to Count Four, and the court will therefore dismiss this Count pursuant to Rule 12(b)(1).

## B. <u>FCA Claims: Counts One, Two, and Three</u>

Defendants move to dismiss Counts One, Two, and Three for failure to state a claim under Rule 12(b)(6) and, since the Complaint alleges fraud, failure to comply with the strictures of Rule 9(b). (Defs.' Br. (Doc. 16) at 4.) Since Relator's FCA Counts (One, Two, and Three) all depend on an underlying AKS violation, Defendants first argue that Relator's allegations about the commission scheme lack the particularity required by Rule 9(b). (<u>Id.</u> at 11–14.) Defendants then argue that the allegations lack particularity regarding any claim ever being presented for payment or a conspiracy to violate the FCA. (<u>Id.</u> at 12–25.) Relator responds by arguing that the facts alleged satisfy Rule 9(b) and give enough information to conclude that Relator has "substantial prediscovery evidence" of the facts surrounding the allegations. (Rel.'s Resp. (Doc. 20) at 6.)

As explained below, the court first finds the Complaint falls far short of Rule 9(b)'s particularity requirement. The Complaint lacks particularity regarding the actual submission of any false claim or a conspiracy to violate the FCA. The Complaint should be dismissed on those grounds alone. However, Relator not only fails to allege the presentment of a false claim or a conspiracy to do so, but he also fails to allege the underlying commission-based scheme with particularity, meaning

the predicate AKS violation is also not adequately plead. For both reasons, the court will dismiss all FCA claims.

## 1. Standard of Review: Rules 12(b)(6) and 9(b)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In addition to the normal pleading requirements of Rule
12(b)(6), claims of fraud must satisfy Rule 9(b)'s heightened
pleading standard. United States ex rel. Grant v. United
Airlines Inc., 912 F.3d 190, 196 (4th Cir. 2018). "In alleging
fraud or mistake, a party must state with particularity the
circumstances constituting fraud or mistake. Malice, intent,
knowledge, and other conditions of a person's mind may be
alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) exists to
give "defendants notice of their alleged misconduct, prevent[]
frivolous suits, and eliminat[e] fraud actions in which all the
facts are learned after discovery . . . ." Grant, 912 F.3d at
196; see also United States ex rel. Nathan v. Takeda Pharm. N.
Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013).

Rule 9(b) "applies with special force" to claims brought
under the FCA. Grant, 912 F.3d at 197. To properly plead an FCA
action under Rule 9(b), the plaintiff must "'describe the time,
place, and contents of the false representations, as well as the
identity of the person making the misrepresentation and what he
obtained thereby.' More precisely, the complaint must allege
'the who, what, when, where and how of the alleged fraud.'"
United States ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th
Cir. 2014) (quoting United States ex rel. Wilson v. Kellogg
Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)). "Rule

9(b)'s particularity requirement serves as a necessary counterbalance to the gravity and 'quasi-criminal nature' of FCA liability." <u>Grant</u>, 912 F.3d at 197 (quoting <u>United States ex rel. Atkins v. McInteer</u>, 470 F.3d 1350, 1360 (11th Cir. 2006)). The consequences of an FCA violation are severe. <u>See</u> <u>United States ex rel. Drakeford v. Tuomey</u>, 792 F.3d 364, 393 (4th Cir. 2015) (Wynn, J., concurring) (noting that the FCA's potential for treble damages "will result in a likely death sentence for a community hospital in an already medically underserved area"). Accordingly, alleged AKS violations serving as predicates for FCA violations must also satisfy Rule 9(b).[4]

Despite Rule 9(b)'s high bar, a court should "hesitate to dismiss a complaint under Rule 9(b) if the [C]ourt is satisfied (1) that the defendant has been made aware of the particular

---

[4] <u>United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.</u>, 915 F.3d 1158, 1166 (8th Cir.), <u>cert. denied</u>, ____ U.S. ____, ____ S. Ct. ____, 205 L. Ed. 2d 356 (Nov. 25, 2019); <u>United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.</u>, 519 F. App'x 890, 894 (5th Cir. 2013); <u>United States ex rel. Vitale v. MiMedx Grp., Inc.</u>, 381 F. Supp. 3d 647, 659 (D.S.C. 2019); <u>Health Choice Grp., LLC v. Bayer Corp.</u>, Case No. 5:17-CV-126-RWS-CMC, 2018 WL 3637381, at *32 (E.D. Tex. June 29, 2018), <u>report and recommendation adopted</u>, No. 5:17-CV-126-RWS-CMC, 2018 WL 3630042 (E.D. Tex. July 31, 2018); <u>United States v. Berkeley Heartlab, Inc.</u>, 247 F. Supp. 3d 724, 730 (D.S.C. 2017); <u>United States ex rel. Kalec v. NuWave Monitoring, LLC</u>, 84 F. Supp. 3d 793, 806 (N.D. Ill. 2015); <u>see United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.</u>, 772 F.3d 1102, 1106 (7th Cir. 2014); <u>Frazier ex rel. United States v. Iasis Healthcare Corp.</u>, 392 F. App'x 535, 537 (9th Cir. 2010).

circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." United States ex rel. Complin v. N.C. Baptist Hosp., No. 1:09CV420, 2016 WL 7471311, at *5 (M.D.N.C. Dec. 28, 2016), report and recommendation adopted, No. 1:09CV420, 2019 WL 430925 (M.D.N.C. Feb. 4, 2019), appeal docketed, No. 0418-2 (4th Cir. Mar. 5, 2019) (quoting Smith v. Clark/Smoot/Russell, 796 F.3d 424, 432 (4th Cir. 2015)).

### 2. Counts One and Two: FCA Presentment and FCA False Records

Even assuming Relator alleged a predicate AKS violation with the requisite particularity, which he has not, the court would still have to dismiss the Complaint for failing to allege the FCA claims with the particularity required by Rule 9(b). Relator alleges Defendants caused false claims to be presented to the government for payment (Count I), and "used[] false records and statements to get false or fraudulent claims paid . . . ." (Count II). (Compl. (Doc. 1) ¶¶ 24, 30.)

"[A] central question in all FCA cases is whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'" Grant, 912 F.3d at 196 (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785–86 (4th Cir. 1999)). It is

for this reason that all FCA claims, whether for presentment (Count I) or false records (Count II), require that a claim actually be submitted. Id. at 196 n.1; United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002) (stating that the submission of a claim is "the sine qua non of a False Claims Act violation").

"[T]he critical question [in an FCA claim] is whether the defendant caused a false claim to be presented to the government, because liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme." Nathan, 707 F.3d at 456. The Relator must, "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Id. at 455–56 (quoting Kellogg Brown & Root, 525 F.3d at 379).

The Fourth Circuit requires FCA relators to allege with particularity at least one representative example of when a fraudulent claim was submitted to the government for payment. See Nathan, 707 F.3d at 457; Ahumada, 756 F.3d at 280 ("To satisfy Rule 9(b), 'an FCA plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making

the misrepresentation and what he obtained thereby.'" (quoting

Kellogg Brown & Root, 525 F.3d at 379)); Foglia v. Renal

Ventures Mgmt., LLC, 754 F.3d 153, 155 (3d Cir. 2014) (citing

Nathan and noting that the Fourth Circuit requires a

representative claim); United States ex rel. Eberhard v.

Physicians Choice Lab. Servs., LLC, 642 F. App'x 547, 550–51

(6th Cir. 2016). It is true that the Fourth Circuit has not

expressly required representative claims, but the reasoning in

Nathan strongly suggests that conclusion. As persuasively stated

by a court in the Eastern District of Virginia:

> The Fourth Circuit has not expressly addressed
> this issue but its ruling in United States ex rel.
> Nathan v. Takeda Pharmaceuticals North America, Inc.,
> 707 F.3d 451 (4th Cir. 2013), suggests that it follows
> those circuits requiring identification of at least
> one representative claim. In Nathan, the Fourth
> Circuit cited favorably both to United States ex rel.
> Clausen v. Lab Corporation of America, Inc., 290 F.3d
> 1301 (11th Cir. 2002), and United States ex rel. Joshi
> v. St. Luke's Hospital, Inc., 441 F.3d 552 (8th Cir.
> 2006). Clausen and Joshi are decisions from the
> Eleventh and Eighth Circuits respectively, holding
> that a qui tarn [sic] relator must identify at least
> some representative claims with particularity.
> Moreover, the Fourth Circuit cited to Joshi
> specifically for the proposition that a relator must
> "provide some representative examples of [the
> defendants'] alleged fraudulent conduct."

Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.,

No. 1:13-CV-1129 (GBL/TCB), 2014 WL 1928211, at *7 (E.D. Va.

May 13, 2014).

This court agrees that Fourth Circuit precedent requires a representative claim for alleged FCA violations.[5] Furthermore, given the lack of particularity in Relator's allegations about the scheme generally, a representative claim is especially appropriate here.

When assessing the particularity of a representative claim, it should be remembered that such examples ultimately serve to assure a court that a relator has satisfied Rule 9(b) and is actually in possession of substantial prediscovery evidence. See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 510 (6th Cir. 2007) (linking the need for an example to Rule 9(b)); United States ex rel. Bender v. N. Am. Telecomms.

---

[5] Realtor appears to agree as well, as he provided and now defends his representative claim. (See Rel.'s Resp. (Doc. 20) at 5-9.)

A few district courts in the Fourth Circuit seem to disagree that relators must provide a representative example of a claim that was actually submitted. See Berkeley Heartlab, 225 F. Supp. 3d 487, 496-97 (D.S.C. 2016); United States ex rel. DeCesare v. Americare In Home Nursing, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010). In both cases, there were significant details about the underlying scheme that provided the requisite particularity. For example, in Berkeley Heartlab, the government alleged a predicate AKS scheme in substantial detail, to include approximate amounts government programs paid and the dates over which those amounts were paid. Berkeley Heartlab, 225 F. Supp. 3d at 496-97.

This court finds a representative claim is likely required under existing Fourth Circuit precedent. Even if it was not, however, the level of particularity otherwise present in the allegations in Berkeley and DeCesare is not present here.

Inc., 499 F. App'x 44, 45 (D.C. Cir. 2013) (same). If a Relator's example is sufficient in other regards, but lacks particularity as to one of the "who, what, when, where and how" components, then that deficiency is not necessarily fatal so long as the representative claim is sufficiently particular in other areas. See, e.g., Hefferman v. Bass, 467 F.3d 596, 601 (7th Cir. 2006) (noting that no exact date was listed, but a time of day was alleged as was the content of the misrepresentation); Berkeley Heartlab, 225 F. Supp. 3d at 499 (noting that no specific submitted claim is noted but listing other significant details that were); CoMentis, Inc. v. Purdue Research Found., 765 F. Supp. 2d 1092, 1110 (N.D. Ind. 2011) (noting there was no exact date, but listing many other details about the overall scheme and the content of the alleged misrepresentation); Greer v. Advanced Equities, Inc., 683 F. Supp. 2d 761, 770 (N.D. Ill. 2010) (detailing contents of a misrepresentation, though the date was imprecise).

Relator offers only the following representative example for the actual submission of a false claim: "For example, on or about Nov 2016, Patient T.W. received an Integra Dermal Replacement Therapy graft furnished by Relator's 1099 counterpart/sales representative Holloway whereby VA care benefits paid for this graft utilized by Dr. Phillips in excess

of $3,000.00." (Compl. (Doc. 1) ¶ 16.) There are several issues
with Relator's offered representative claim.

First, Relator's example is not an allegation about a
submitted claim, but instead is an allegation about a medical
procedure involving Integra's products that were eventually paid
for by government funds.

Beyond that fundamental issue, the representative claim
also lacks particularity in several regards. The date is
November 2016, not a precise day, and not the date the claim was
submitted, but instead was the date the procedure took place.
The amount paid by the government is "in excess of $3,000.00,"
not a precise amount. Even the Integra 1099 representative named
is named only by what is presumably his/her last name, though
even that is not clear. It is also not alleged where this
procedure took place, though it presumably was a VA facility.
Relator's example does not answer who submitted a claim, when
the claim was submitted, where it was submitted, or what the
contents of the claim were, beyond the fact they were for
repayment of an amount "in excess of $3,000.00." This lack of
particularity in Relator's representative claim falls short of
Rule 9(b)'s requirements.

Relator attempts a piecemeal defense of his representative
claim, taking apart each "who, what, when, where and how"

component, Ahumada, 756 F.3d at 280, and arguing that the lack
of particularity with each is not an issue, even under Rule
9(b), (Rel.'s Resp. (Doc. 20) at 6–7). By citing to cases where
one component was less particular than others, Relator argues
that a lack of particularity across multiple categories is not
problematic. Relator is correct that courts will permit less
particularity in a category when other categories contain
sufficient particularity. Relator is incorrect that his
representative claim fits that description.

To use the persuasive words of a district court in
Maryland, the Realtor's FCA claims "suffer from the same fatal
flaw as his other . . . allegations: although the relator
alleges an illegal scheme that could have resulted in the
submission of false claims to the government, he does not
provide the details of any false claim that actually was
submitted." United States ex rel. Palmieri v. Alpharma, Inc.,
928 F. Supp. 2d 840, 857 (D. Md. 2013). Relator's representative
claim is not a claim at all. It is consistent with an Integra
employee observing a procedure at a VA facility in the course of

their employment and reporting it;[6] it is not consistent with someone who has substantial prediscovery knowledge of another company's allegedly fraudulent payment scheme or the submission of such claims to the government. For all these reasons, the court concludes that Relator has failed to allege with particularity a representative example of a false claim actually being submitted for payment.

### 3. Count Three: Conspiracy to Violate the FCA

Relator's third FCA claim is for a violation of 31 USC § 3729(a)(1)(C), conspiracy to submit a false claim under the FCA. As with Counts One and Two, Count Three should be dismissed

---

[6] Some courts have relaxed the requirement that a relator allege with particularity a representative example if that relator has also alleged that they are an "insider" who is intimately familiar with a defendant's billing practices. See Carrel v. AIDS Healthcare Found., Inc., 898 F.3d 1267, 1276 (11th Cir. 2018). Just working for a company is not enough to make a relator an insider; they must have some firsthand knowledge of false claims actually being submitted. See id.; United States ex rel. Fite v. Aperian Lab. Solutions, LLC, Civil Action Number 5:13-cv-01626-LSC, 2016 WL 11164665, at *1, *5 (N.D. Ala. Apr. 26, 2016) (noting that a director of operations who was responsible for billing was an "insider"). A salesperson could be an "insider," but they must allege how their role brought them into contact with the company's billing practices. See United States ex rel. Troncoso v. Rego Int'l, LLC, Case No. 14-60776-CIV-ALTONAGA/Goodman, 2018 WL 2220430, at *3 (S.D. Fla. May 15, 2018). In the instant case, Relator does not allege facts supporting the conclusion that he has first-hand knowledge of Defendants' government billing practices.

regardless of whether Relator adequately pled a predicate AKS violation.

> To state a cause of action under 31 U.S.C.
> § 3729(a)(1)(C), the [relator] must allege that
> Defendants . . . "conspired to commit a violation of
> §§ 3729(a)(1)(A) or (B)." The complaint must allege
> the existence of an agreement to violate the FCA and
> at least one act performed in furtherance of that
> agreement.

Berkeley Heartlab, 225 F. Supp. 3d at 501 (alterations in original) (quoting 31 U.S.C. § 3729(a)(1)(C)); see also United States ex rel. Farmer v. City of Houston, 523 F.3d 333, 343 (5th Cir. 2008); DeCesare, 757 F. Supp. 2d at 584. Relators must also allege facts supporting the conclusion that the "conspirators must have 'shared a specific intent to defraud the Government.'" DeCesare, 757 F. Supp. 2d at 584 (quoting Farmer, 523 F.3d at 343). The act performed in furtherance of the agreement and the intent must be alleged with particularity according to Rule 9(b). See United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 26 (2d Cir. 2016); United States v. HPC Healthcare, Inc., 723 F. App'x 783, 791 (11th Cir.), cert. denied, ____ U.S. ____, 139 S. Ct. 69 (2018); Berkeley Heartlab, 225 F. Supp. 3d at 502; Pencheng Si v. Laogai Research Found., 71 F. Supp. 3d 73, 98 (D.D.C. 2014).

Relator argues that the acts in furtherance of the conspiracy included the alleged representative claim and the

commission scheme between Integra contractors and Turpin.
(Rel.'s Resp. (Doc. 20) at 9–10.) For the same reasons explained
in detail in the sections dealing with Realtor's allegations
about the presentment of a claim and the underlying AKS
violation, the court finds that those acts are not alleged with
the particularity required by Rule 9(b). No other acts in
furtherance of the conspiracy are alleged.

Furthermore, Relator has not alleged with particularity a
shared intent amongst Defendants and/or other parties. Relator
argues that intent need not be written or verbal but can be
gleaned from a "practice, pattern or course of conduct." (Rel.'s
Resp. (Doc. 20) at 9 (quoting 12 C.F.R. § 1024.14(e)).) In
support of that contention, Relator directs the court to a
federal regulation governing mortgage settlement and escrow
accounts. The court is not persuaded.

Even if Relator is correct that a pattern can establish a
shared intent and agreement, no such pattern has been alleged
with particularity here. Since the court cannot assume MedCom
LLC is the same entity as MedCom Carolinas, Inc., see Section
II.C.2 infra, Turpin is the only named Defendant who even
engaged in the payment scheme. John Does 1-50 are not known to
Relator, (Compl. (Doc. 1) ¶ 8), meaning Relator cannot allege
his intent with any particularity. Even the pattern between

Turpin and Integra contractors is alleged with the barest of facts; Relator does not allege the circumstances that explain what shared goal existed between Turpin and his competitor's contractors who were selling competitor's products.

Relator has failed to state with particularity the circumstances constituting the allegedly fraudulent conspiracy. For that reason, Count Three should also be dismissed.

### 4. Conclusion as to Counts One, Two, and Three

"Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the gravity and 'quasi-criminal nature' of FCA liability." Grant, 912 F.3d at 196 (quoting Atkins, 470 F.3d at 1360). Relator has failed to allege, with particularity, a representative example of a false claim being submitted or a conspiracy with any particularity. For those reasons, Relator's FCA counts (One, Two, and Three) should be dismissed.

### C. The Predicate AKS Violation

Though the court finds that the Complaint should be dismissed for failing to plead the overarching FCA claims with particularity, it will also address the predicate AKS violations. The court finds that Relator has failed to plead the underlying commission-based payment scheme with the particularity required by Rule 9(b), meaning Relator has failed

to allege the predicate AKS violation that underpins his FCA claims.

As noted above, Relator's FCA counts all rely on an underlying AKS violation in the form of an allegedly illegal commission scheme. Any "AKS violation that results in a federal health care payment is a per se false claim under the FCA." United States ex rel. Lutz v. United States, 853 F.3d 131, 135 (4th Cir. 2017) (citing 42 U.S.C. § 1320a-7b(g)); United States ex rel. Kester v. Novartis Pharm. Corp., 43 F. Supp. 3d 332, 363 (S.D.N.Y. 2014) ("[C]ompliance with the AKS is a precondition to the reimbursement of claims, not just a condition of participation; claims tainted by AKS violations are ineligible for reimbursement and, thus, 'false.'").

Under the AKS, it is illegal to pay:

> any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
> > (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
> >
> > (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program.

42 U.S.C. § 1320a-7b(b)(2)(A)-(B) (emphasis added). "The statute is aimed at the inducement factor." United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 29 (1st Cir. 1989); United States v. Greber, 760 F.2d 68, 71 (3d Cir. 1985); Feldstein v. Nash Cmty. Health Servs., Inc., 51 F. Supp. 2d 673, 681 (E.D.N.C. 1999); see also United States v. Borrasi, 639 F.3d 774, 782 (7th Cir. 2011) (joining the Third, Fifth, Ninth, and Tenth Circuits, and thus not creating a circuit split, in holding government need only prove inducement was a motivation for remuneration); Berkeley Heartlab, 225 F. Supp. 3d at 468 ("Moreover, in FCA cases involving AKS violations, courts have found scienter where one purpose of the remuneration was to induce referrals."); Robert Wood Johnson Univ. Hosp., Inc. v. Thompson, No. Civ.A.04-142(JWB), 2004 WL 3210732, at *6 (D.N.J. Apr. 15, 2004) (citing the AKS's legislative history and noting the AKS was aimed at combating wasteful spending, particularly in the form of payments that are "intended to induce patient referrals").

If a medical device company uses a 1099 nonemployee contractor to sell its product, the product is paid for by a government program, and the company pays a commission to the contractor based on the volume of sales, that arrangement may

violate the AKS.[7] See 42 C.F.R. § 1001.952(d)(5) (noting that personal services contracts must not be based on the "volume or value of any referrals"); Medicare and Medicaid Programs; Fraud and Abuse OIG Anti-Kickback Provisions, 54 Fed. Reg. 3088-01 (Jan. 23, 1989) (declining to extend the bona fide employee safe harbor to contractors because of concerns about control over personnel). However, paying a 1099 contractor is not per se unlawful. See Eberhard, 642 F. App'x at 548; United States v.

---

[7] It is possible this is what Relator is attempting to allege Defendants did. If it is, Relator has not submitted facts sufficient to plausibly, much less particularly, allege that this is what occurred. The 1099 sales representatives were Integra contractors. (Compl. (Doc. 1) ¶ 16.) Relator claims he learned about this scheme because he, as a full-time Integra employee, got to know these contractors through some form of a national Integra competition. (Id.) It is possible the contractors worked for both companies, but the fact that commissions were paid for the furnishing of Integra products suggests they were not also MedCom contractors in any formal sense. Indeed, Relator's one specific example about when the allegedly fraudulent scheme took place indicates that it was an Integra 1099 contractor who facilitated the sale of an Integra product. (Id. ¶ 16.)

Though Relator must plead the underlying AKS violation with particularity, he has failed to even meet the less stringent plausibility standard of Rule 8. If Relator is attempting to allege that Defendants paid commissions to their own 1099 sales force, the Complaint does not include facts that would allow "the court to draw the reasonable inference that the defendant is liable." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57). There are simply no facts that allow the court to draw any reasonable inference about how MedCom, Turpin, or anyone else, for that matter, benefited from the scheme, because the allegations about the scheme are, frankly, incomprehensible.

Berkeley HeartLab, Inc., Civil Action No. 9:14-230-RMG, 2017 WL 4803911, at *12 (D.S.C. Oct. 23, 2017); see also 42 C.F.R. § 1001.952(d) ("Personal services and management contracts" safe harbor provision).

Relator argues in the Complaint that 42 U.S.C. § 1320a-7b "prohibits a person or firm from providing or soliciting remuneration as an inducement for referrals of Medicare . . . ." (Compl. (Doc. 1) ¶ 9.) Relator alleges that "Relator's employer Integra utilized 1099 nonemployee reps to generate referrals for Medicare/Medicaid and other federal healthcare program patients in violation of the anti-kickback statute," and that these "representatives were paid by Jeff Turpin who owns MedCom LLC in whole or in part for furnishing items covered by federal healthcare programs and received commissions based on the same including PriMatrix and Integra Dermal Replacement Therapy." (Id. ¶ 16.) Relator's pleadings appear to assume that pleading a payment to a 1099 contract sales representative is enough to satisfy Rule 9(b); Relator is incorrect, as the case law, regulations, and advisory opinions cited above indicate.

Beyond Relator's misplaced reliance on pleading a vague reference to a 1099 employee into a medical sales position, there are several other issues with Relator's AKS allegations. First, Relator has failed to state with particularity the

circumstances constituting the fraudulent commission scheme. Second, Relator has introduced further confusion into the pleadings by referring to a non-defendant entity, MedCom LLC. Finally, far from meeting the particularity requirements of Rule 9(b), Relator's allegations about the commission scheme do not even meet Rule 8's lower plausibility threshold.

### 1.   Commission Scheme is Not Alleged with Particularity

Relator fails to allege the broader commission scheme with the requisite particularity under Rule 9(b).

Though paying sales contractors' commissions may be suspect, relators in other cases still allege facts beyond the bare assertion that such an arrangement exists. See Eberhard, 642 F. App'x at 548 (noting that relator attached a sales agreement to complaint); cf. Waldmann v. Fulp, 259 F. Supp. 3d 579, 584–85 (S.D. Tex. 2016) (listing the detailed allegations provided regarding commissions paid to employees); Fite, 2016 WL 11164665, at *1 (noting that in a case involving commissions to employees, the complaint involved a detailed breakdown of the commission scheme); United States ex rel. Cairns v. D.S. Med. LLC, No. 1:12CV00004 AGF, 2015 WL 630992, at *1 (E.D. Mo. Feb. 12, 2015) (noting detailed allegations about commission scheme).

Relator does not allege what percentage the Integra 1099 representatives were paid in commissions, alleging only that they were paid commissions and that these 1099 representatives were paid "in whole or in part" for "furnishing items covered by federal healthcare programs." (Compl. (Doc. 1) ¶¶ 5, 16.) Relator also does not allege if the Integra 1099 representatives entered into a contract or agreement with Defendants, or if the scheme was an informal agreement.

The only specific transaction alleged by Relator does little to elucidate the scheme: "on or about Nov 2016, Patient T.W. received an Integra Dermal Replacement Therapy graft furnished by Relator's 1099 counterpart/sales representative Holloway whereby VA care benefits paid for this graft utilized by Dr. Phillips in excess of $3,000.00." (Id. ¶ 16.)

This description is not sufficient to satisfy the pleading requirements for fraud under Rule 9(b). It does not describe any kickback or unlawful conduct under the AKS, nor do the allegations describe what may have been obtained by any unlawful conduct. It is completely unknown what a "1099 counterpart/sales representative" refers to, who may have paid remuneration, if any, to the individual, and whether the individual was paid by MedCom or Turpin. Even if a reasonable inference could be drawn as to a payment by MedCom or Turpin to Holloway, there is

nothing to describe what that payment was for or, more pointedly, whether the payment was for a prohibited inducement under 42 U.S.C. § 1320a-7b.

Relator claims that, in his role as an Integra employee, he was "made aware of patient payors, dates of submissions, amount of submissions, and the basis for the same" as described in the Complaint. (Compl. (Doc. 1) ¶ 5.) If Relator actually has more information, it is not clear from these pleadings. Based on what little Relator has pled, the court is skeptical that Relator possesses substantial prediscovery knowledge of any scheme. Relator's lack of detail is noteworthy when compared with cases like Eberhard, Waldmann, Fite, and Cairns. The court has not found, and Relator has not provided, any case that survived Rule 9(b) scrutiny with the kind of facts Relator alleges here. Relator has failed to plead the commission scheme with the particularity required by Rule 9(b).

### 2. **MedCom LLC Versus MedCom Carolinas, Inc.**

Relator's pleadings are made even less particular by the reference to a nondefendant entity, "MedCom LLC." Relator's allegations never mention any Defendant other than Turpin in the commission scheme. All allegations regarding payment of a commission involve Turpin and "MedCom LLC," an entity that is not a named party. (Id. ¶¶ 5, 16, 19.)

"MedCom Carolinas, Inc." is the other named Defendant, not MedCom LLC. (Compl. (Doc. 1) ¶ 6.) The court is not being trivial — the distinction matters. See, e.g., Huber v. GMAC, LLC, No. 8:10-cv-2458-T-24 EAJ, 2011 WL 1466278, at *2 (M.D. Fla. Apr. 18, 2011) (noting plaintiffs named wrong defendant when they named "GMAC, LLC" instead of "GMAC Mortgage, LLC"); Kelly v. Enbridge (U.S.) Inc., No. 07-3245, 2008 WL 2123755, at *1, *6 (C.D. Ill. May 16, 2008); Allen v. Byrne, No. 3:07-CV-0601-O, 2008 WL 1869237, at *1 (N.D. Tex. Apr. 28, 2008) (noting that plaintiff amended complaint to correct "Drakeford LLC with Drakeford PA").

Though referring to MedCom LLC could be read as an erroneous attempt to name MedCom Carolinas, Inc., Relator's own pleadings and motions make that assumption untenable. Defendants pointed out the reference to MedCom LLC in its brief supporting its motion to dismiss, (Defs.' Br. (Doc. 16) at 1 n.1), but Relator referred to "MedCom LLC" again in its subsequent response, (Rel.'s Resp. (Doc. 20) at 3). Additionally, at least once in the Relator's Complaint they refer to "Defendant companies' payments," (Compl. (Doc. 1) ¶ 18), another possible typo, but an allegation that further undermines any assumption that the named Defendant and MedCom LLC are one and the same. With this added confusion, Relator's allegations are even less

clear since a different legal entity, MedCom LLC, was somehow involved, but not in a way that is explained with particularity.

### 3. <u>Inducement Factor not even Alleged with Plausibility</u>

Though Relator must meet Rule 9(b)'s particularity pleading standard, Relator does not even plausibly allege that Defendants were attempting to induce any referrals. Relator alleges that MedCom LLC and Turpin paid Integra contractors a commission in an attempt to "generate referrals" for federal healthcare programs, (Compl. (Doc. 1) ¶ 5), and that they were attempting to get Integra to "furnish items covered by federal healthcare programs," to include at least one Integra product, (id. ¶ 16). Though the court takes as true the allegation that Turpin paid commissions to Integra contractors, the allegation that Defendants sought to "induce referrals" is a "[t]hreadbare recital of the elements" of an AKS violation, not a factual allegation. See Iqbal, 556 U.S. at 678. With the only alleged fact being that Turpin paid commissions to his competitor's contractors, the scheme is implausible, much less alleged with particularity. Id. (citing Twombly, 550 U.S. at 556–57) (stating that a claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more

than a sheer possibility that a defendant has acted unlawfully"). Relator does not allege what MedCom does or how it makes money. Relator does not allege how or if MedCom even benefited from this scheme. Even Relator's representative example of a false claim being submitted is devoid of any allegations that a commission was paid in that instance. (<u>See</u> Compl. (Doc. 1) ¶ 16.)

In sum, Relator does not plausibly allege that Defendants sought to induce anything. Therefore, Relator also failed to state with particularity the circumstances constituting the fraudulent commission scheme.

### 4. <u>Underlying AKS Scheme is not Adequately Plead</u>

Relator has failed to plead the predicate AKS violations with the particularity required by Rule 9(b) and, regarding the inducement factor, the plausibility required by Rule 8. For these reasons, all Relator's FCA counts should be dismissed pursuant to Rules 9(b) and 12(b)(6).

### D. <u>Count Five: North Carolina FCA</u>

Since the court will dismiss all counts of Relator's claim over which it has federal question jurisdiction, it will also

decline to exercise supplemental jurisdiction over Relator's state law claim.

A district court may dismiss a state law claim brought before it under supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to do so is completely within the court's discretion. <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009); <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims.").

Since this matter has not progressed past the motion-to-dismiss stage and only a state law claim remains, the court will exercise its discretion and decline to exercise supplemental jurisdiction over Count Five. Count Five will therefore be dismissed.

## III. **CONCLUSION**

Relator brings what is a "quasi-criminal" action without pleading his claims with the particularity required by Rule

9(b).[8] More would be required here before Relator could unlock the expensive doors of discovery.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss, (Doc. 15), for failure to state a claim filed by Defendants MedCom Carolinas, Inc., and Jeff Turpin is **GRANTED** and that this case is **DISMISSED WITH PREJUDICE.**

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 16th day of March, 2020.

_____
United States District Judge

---

[8] Relator accuses Defendants of expecting them to "try their entire case within the four corners of their Complaint." (Rel.'s Resp. (Doc. 20) at 1.) Rule 9(b) does not require a relator to prove their case, but relators must convince a court that they have substantial prediscovery evidence and are not on a "fishing expedition." Grant, 912 F.3d at 204. Relator's Complaint does not plausibly or specifically allege a fraudulent scheme as required by the rules of notice pleading.