IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,              )
ex rel. HAILE KIROS NICHOLSON,         )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        1:17CV34
                                       )
MEDCOM CAROLINAS, INC., JEFF           )
TURPIN, and JOHN DOES (1-50)           )
INCLUSIVE,                             )
                                       )
            Defendants.                )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

On March 16, 2020, this court entered a Memorandum Opinion
and Order, (Doc. 24), and Judgment, (Doc. 25), granting
Defendants' motion to dismiss, (Doc. 15), and dismissing this
action with prejudice, (see Doc. 25). On April 10, 2020,
Plaintiff filed a Motion to Alter or Amend the Judgment and
Leave to File an Amended Complaint. (Doc. 26.) The motion is
made pursuant to Fed. R. Civ. P. 59(e) and 15(a)(2) and is ripe
for ruling. For the following reasons, this court finds the
motion should be denied.

## I. ANALYSIS

### A. Legal Standard for Amendment

Fed. R. Civ. P. 59(e) authorizes a court to amend a judgment within 28 days after entry of the judgment but does not provide an applicable standard for when amendment is appropriate. The Fourth Circuit recognizes at least "three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Notwithstanding those limitations, a motion to amend a post-judgment complaint is evaluated under the same legal standard as a motion made before judgment was entered. Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). The standard is as follows:

> Motions for leave to amend should generally be granted in light of "this Circuit's policy to liberally allow amendment." Galustian v. Peter, 591 F.3d 724, 729 (4th Cir. 2010). However, a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).

Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 293 (4th Cir. 2018). A party seeking amendment from the court need not

- 2 -

file a supporting brief under the local rules, but "must state good cause" for the amendment. L.R.7.3(j). Once a motion is filed, the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under the rule's liberal construction, see Ward Elecs. Serv., Inc. v. First Com. Bank, 819 F.2d 496, 497 (4th Cir. 1987), motions to amend should be granted absent extraordinary circumstances. Such circumstances include undue delay, bad faith or dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. Foman v. Davis, 371 U.S. 178 (1962).

The facts and procedural history of this case are set out in this court's Memorandum Opinion and Order, (Doc. 24), which is incorporated by reference. This court will address the individual claims of the proposed Amended Complaint to determine whether the motion to amend and corresponding motion to set aside the judgment should be granted or denied. The proposed Amended Complaint contains similar claims to those filed in the original Complaint; this court begins its analysis with Count IV of the proposed Amended Complaint because that count was originally dismissed on jurisdictional grounds. This court found Relator did not have standing.

- 3 -

**B.    <u>Anti-Kickback Statute Count</u>**

Count IV of the proposed Amended Complaint, (Proposed Am.
Complaint ("Proposed Am. Compl.") (Doc. 26-1) at 18), alleges a
standalone violation of the Anti-Kickback Statute, 42 U.S.C.
§ 1320a-7(b). This count was identically pled in the original
Complaint. (Original Complaint ("Original Compl.") (Doc. 1) at
14-15.) This court held dismissal of that count was proper under
Fed. R. Civ. P. 12(b)(1), as the Anti-Kickback Statute ("AKS")
is a "federal criminal statute[s] without a private cause of
action." (Memorandum Opinion and Order ("Mem. Op. & Order")
(Doc. 24) at 10.) In fact, Relator conceded there is no private
right of action under that statute. (Doc. 20 at 1 n.1
("Plaintiff does not dispute that it can't maintain an
individual AKS violation.").) Therefore, the action was
dismissed because Relator did not have standing as to Count
Four.

In spite of this finding, and in spite of the concession by
Relator that he could not maintain an individual AKS violation
action, Relator has alleged in his Amended Complaint an
identical Count IV to the one previously dismissed. (<u>Compare</u>
(Original Compl. (Doc. 1) at 14-15 <u>with</u> (Proposed Am. Compl.
(Doc. 26-1) at 18.) A district court may deny leave to amend
"when . . . there has been bad faith on the part of the moving

- 4 -

party, or the amendment would be futile." <u>Johnson v. Oroweat</u> <u>Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1986). This court finds, as to the proposed amended Count IV, that Relator's motion to amend should be denied. Relator's repeated allegation for which Relator has admitted, and this court has found, that there is no individual cause of action, is not a good faith pleading.

### C.  <u>False Claims Act Claims: Counts One, Two, and Three</u>

Counts I, II, and III of the Complaint were dismissed for failure to allege fraud with particularity pursuant to Fed. R. Civ. P. 9(b) and for failure to allege the underlying commission-based scheme with particularity. (<u>See</u> Mem. Op. & Order (Doc. 24) at 11-35.) Relator is a former sales representative for Integra Life Sciences ("Integra"). (Proposed Am. Compl. (Doc. 26-1) ¶ 5.) Relator alleges that he has knowledge of Integra's billing process for wound care products as well as provider offices and reimbursement personnel "such that it was clear that Defendant MedCom Carolina's Inc., and Jeff Turpin's schemes cause false claims to these federal healthcare program patients . . . ." (<u>Id.</u>)[1]

---

[1] The corporate Defendant is designated as MedCom Carolinas, Inc. (Original Compl. (Doc. 1) ¶ 6.) Defendant Jeff Turpin is the sole owner of MedCom Carolinas, Inc. (<u>Id.</u> ¶ 7.) Integra sells products for treatment of thermal injury; one of those products is PriMatrix. (<u>Id.</u> ¶¶ 14-15.)

The allegations of the original Complaint, (Original Compl. (Doc. 1)), and the proposed Amended Complaint, (Proposed Am. Compl. (Doc. 26-1)), are at best confusingly pled. This court finds it helpful to quote the allegations verbatim from the proposed Amended Complaint that describe the scheme:

> Jeff Turpin was the sole owner of MedCom Carolinas, Inc. that employed independent contractors utilizing IRS Form 1099-MISC to generate referrals for Medicare/Medicaid and other federal healthcare program patients in violation of the anti-kickback statute. Specifically, these representatives/contractors were paid in whole or in part for furnishing items covered by federal healthcare programs and Jeff Turpin paid the "Medcom" contractors commissions based on the same including when they sold PriMatrix and Integra Dermal Replacement Therapy grafts that were manufactured and produced by Integra.

(Proposed Am. Compl. (Doc. 26-1) ¶ 5.) Relator later alleges that:

> these Medcom contractors, who were not employees of Integra, received commissions for promoting its products including "PriMatrix" and "Integra Dermal Replacement Therapy" based on the volume of business reimbursed by federal healthcare programs. . . . Although Medcom did not manufacture any products of its own, Turpin, paid all of his sales representatives located in various territories on a commission structure based on the volume and value of sales of Integra's products such as IDRT, Omnigraft or Primatrix that were reimbursed by federal healthcare programs throughout Relator's tenure with Integra from March 2015 until September 2017.

(Id. ¶ 16.) Relator alleges that a sales representative for MedCom helped promote Integra products, pursuant to Jeff

- 6 -

Turpin's commission structures for physicians in the area. (Id.)
Relator then describes what appears to be the core of his
allegations of fraud:

> throughout Relator's tenure with Integra, although
> Integra received all the reimbursements from third
> parties such as the VA, or area hospitals, for
> Integra's products sold by Medcom or the Integra sales
> force, Integra paid Medcom 25% commission of the net
> sales for Primatrix or Integra Dermal Therapy Grafts
> (i.e. after shipping and taxes, discounts were
> deducted) that were sold by Medcom contractors within
> 30 days of the sale. Of that amount, Holloway was paid
> 40% of the reimbursement that Medcom received within
> thirty days from Medcom. Holloway also admitted to the
> lack of supervision by Turpin at Medcom. When
> questioned about the rate of reimbursement, Relator
> was reminded by Holloway of that which he already knew
> — that the surgical wound grafts such as "IDRT" were
> based on a buy and bill model. In other words,
> accounts such as the VA were face to face driven
> accounts whereby their physicians utilized the
> products based on its availability provided by the
> sales representatives. Therefore, the claims were
> "presented" when the graft was tendered by the sales
> representative to be utilized by the physician during
> the medical procedure for surgical wounds when the
> IDRT grafts were utilized. At the Durham VA, the claim
> is submitted at the time of service of the procedure
> at a preset price based on what is referred to as a
> "FSS list," and then the claim is processed for
> payment within a day or two of the doctor entering the
> electronic consult. Based on Relator's role with the
> company, he had easy access from either purchasing or
> his own sales counterparts about the cost of the
> grafts of IDRT at the VA, the date his products were
> utilized in his territory, the amount paid by the VA
> which is preset based on a "FSS" schedule, the patient
> information, the time the claim was presented, why the
> claims were presented and the physician who utilized
> the graft.

(Id.) Relator concludes:

> Relator learned on or about January 2017 that pursuant
> to Holloway's commission incentive offer directed by
> Jeff Turpin of Medcom (based on the value and volume
> of grafts that were reimbursed by the VA), Mr. Robert
> Holloway submitted a claim for payment on or about Nov
> 2016, to Dr. Phillips for an Integra Dermal Therapy
> Replacement Graft for use on Patient T.W. at the
> Durham VA. The claim was ultimately paid for by an
> agent of the processing department of the VA through
> VA care benefits in excess of $3,000.00 during this
> same month to Integra.

(Id.)

While it is hardly clear from these allegations, this court
will assume, arguendo, that Holloway was an independent
contractor paid by MedCom, and as part of his sales, Holloway
sold and/or delivered Integra products. Holloway was paid a
commission for that delivery and invoicing under presently
unexplained circumstances. When construing the allegations of
the proposed Amended Complaint - using the Holloway transaction
as illustrative - this court finds that surgical wound grafts
were based on a "buy and bill model" "whereby their physicians
utilized the products based on its availability provided by the
sales representatives." (Proposed Am. Compl. (Doc. 26-1) ¶ 16.)
"[C]laims were 'presented' when the graft was tendered by the
sales representative to be utilized by the physician during the
medical procedure." (Id.)

Drawing all reasonable inferences from the proposed Amended
Complaint in favor of Relator, this court finds the proposed

- 8 -

Amended Complaint does not allege "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

### 1. __Absence of Any Representative Example__

Relator's motion and the accompanying proposed Amended Complaint do not contain the factual information necessary to render amendment appropriate. Assuming Relator's motion to alter the judgment constitutes a brief, as required,[2] it is in violation of L.R.7.2(a)(2), which requires that "[e]ach statement of fact should be supported by reference to a part of the official record in the case." Moreover, Relator's proposed amended complaint falls short of providing at least one representative example of fraud under the False Claims Act ("FCA"). As this court stated in its prior Memorandum Opinion and Order:

> The Fourth Circuit requires FCA relators to allege with particularity at least one representative example of when a fraudulent claim was submitted to the government for payment. See Nathan, 707 F.3d at 457; Ahumada, 756 F.3d at 280 ("To satisfy Rule 9(b), 'an FCA plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" (quoting Kellogg Brown & Root, 525 F.3d at 379)); Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 155 (3d Cir. 2014) (citing Nathan and noting that

---

[2] Although a motion to amend the pleadings does not require a brief, a motion to alter a judgment does. L.R.7.3(a); LR7.3(j).

- 9 -

the Fourth Circuit requires a representative claim);
United States ex rel. Eberhard v. Physicians Choice
Lab. Servs., LLC, 642 F. App'x 547, 550-51 (6th Cir.
2016). It is true that the Fourth Circuit has not
expressly required representative claims, but the
reasoning in Nathan strongly suggests that conclusion.

(Mem. Op. & Order (Doc. 24) at 16-17.) This court then went

on to cite persuasive authority regarding the need for

representative examples:

> The Fourth Circuit has not expressly
> addressed this issue but its ruling in
> United States ex rel. Nathan v. Takeda
> Pharmaceuticals North America, Inc., 707
> F.3d 451 (4th Cir. 2013), suggests that it
> follows those circuits requiring
> identification of at least one
> representative claim. In Nathan, the Fourth
> Circuit cited favorably both to United
> States ex rel. Clausen v. Lab Corporation of
> America, Inc., 290 F.3d 1301 (11th Cir.
> 2002), and United States ex rel. Joshi v.
> St. Luke's Hospital, Inc., 441 F.3d 552 (8th
> Cir. 2006). Clausen and Joshi are decisions
> from the Eleventh and Eighth Circuits
> respectively, holding that a qui tarn [sic]
> relator must identify at least some
> representative claims with particularity.
> Moreover, the Fourth Circuit cited to Joshi
> specifically for the proposition that a
> relator must "provide some representative
> examples of [the defendants'] alleged
> fraudulent conduct."

Virginia ex rel. Hunter Labs., LLC v. Quest
Diagnostics, Inc., No. 1:13-CV-1129 (GBL/TCB), 2014 WL
1928211, at *7 (E.D. Va. May 13, 2014).

(Mem. Op. & Order (Doc. 24) at 17.)[3]

Relator argues in his motion that the Amended Complaint clarifies any deficient allegations in the original Complaint:

> But with this clarification, it should be abundantly clear that Jeff Turpin and Rob Holloway, as agents of Medcom, caused a false claim in violation of the AKS to be submitted on or about November 2016, at the VA (Durham), for an Integra Dermal Replacement graft furnished by Rob Holloway whereby the VA care benefits paid for this graft in excess of $3,000.00. This is enough to establish the specifics necessary to state a claim under both Rule 9B and 12(b)(6) based on the law of this Circuit.

(Doc. 26 at 9.) Notably, Relator does not cite to any allegations in the proposed Amended Complaint to support the facts described in the motion.

Relator's reply, (Doc. 29), also ignores the requirements of L.R.7.2. For example, Relator argues that he "has alleged that a false claim was both presented to and paid for by the Government." (Doc. 29 at 8.) The closest Relator comes in the proposed Amended Complaint to specifically alleging a false claim is the statement that "it was Rob Holloway who not only recommended this product but made this graft available . . .

---

[3] Even if this court were to find that a representative claim is not required, that would not change the result here. This court finds Relator has failed to plead any fraudulent conduct plausibly and with particularity even if representative claim is not required.

- 11 -

based on Rob Holloway's compensation incentive from Defendants Medcom and Jeff Turpin which violated the AKS."[4] (Id. at 6.) Relator offers no citation to these facts in the proposed Amended Complaint. "If an attorney or a party fails to comply with a local rule of this Court, the Court may impose sanctions against the attorney or party, or both." LR83.4(a). Those sanctions include "an order refusing to allow the failing party to support or oppose designated claims or defenses." LR83.4(a)(2).

## 2. Failure to State Claims

Relator also falls short of alleging fraud with the facts that are alleged. The proposed Amended Complaint does not allege that MedCom billed for Integra products which were not in fact delivered; therefore, this court does not plausibly find or infer that a bill was sent for a product that was not delivered

---

[4] As will be explained hereafter, it is not clear what Relator is suggesting by alleging Rob Holloway "recommended" the product. Other than alleging that Rob Holloway submitted a bill for the product, the details of the sale, how Holloway was compensated, and what he was compensated for are not alleged, at least in a manner to suggest Holloway was compensated for an "inducement." The proposed Amended Complaint alleges the purchases were made based upon a "buy and bill" model wherein "physicians utilized the products based on its availability provided by the sales representatives." (Proposed Am. Compl. (Doc. 26-1) ¶ 16.) Relator's own pleading seems to allege it was not unlawful inducements but instead availability that controlled the sale.

under the "buy and bill" model. Nor does the proposed Amended Complaint allege that there was any fraud in the delivery of the product itself.

Holloway billed the VA on or about November 2016 for an Integra Dermal Therapy Replacement Graft for use on Patient T.W. by Dr. Phillips. (Proposed Am. Compl. (Doc. 26-1) ¶ 16.) The November claim was paid by the VA pursuant to a preset price based on an FSS list, (id.), in an amount in excess of $3,000.00. (Id.) In the absence of any allegations otherwise, this court finds the proposed Amended Complaint does not allege any irregularity as to the amount paid by the VA, or any other healthcare provider, since the proposed Amended Complaint alleges payments were made pursuant to a preset price as set out on the "FSS" list.

"Integra received all the reimbursements from third parties such as the VA, or area hospitals, for Integra's products sold by Medcom or the Integra sales force." (Id. ¶ 16.) Thus, it appears, payment for the November 2016 transaction was made to Integra. Relator alleges no fraud in the payment by the VA, or any other healthcare provider, to Integra. Thereafter, "Integra paid Medcom 25% commission of the net sales for Primatrix or Integra Dermal Therapy Grafts (i.e. after shipping and taxes, discounts were deducted) that were sold by Medcom contractors."

- 13 -

(Id.) Of the 25% commission Integra paid MedCom, Holloway received a 40% commission, (id.), apparently paid by MedCom.

Viewing each step of the transaction, Relator's allegations do not plausibly allege fraud, much less the circumstances of fraud with particularity. The claim for payment submitted by Holloway to the VA is not alleged to be fraudulent; the payment from the VA to Integra is not alleged to be fraudulent nor to have been induced by fraud; and finally, the payment from Integra to MedCom is not alleged to be fraudulent. "[A] central question in all FCA cases is whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'" United States ex rel. Grant v. United Airlines Inc., 912 F.3d 190, 196 (4th Cir. 2018) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785-86 (4th Cir. 1999)). Relator must, "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Nathan, 707 F.3d at 455-56. The allegations contained in the proposed Amended Complaint do not establish a false representation of any type, much less one sufficient to establish liability under the False Claims Act. As noted previously by this court, these allegations are "about a medical procedure involving Integra's

- 14 -

products that were eventually paid for by government funds" and not anything specific to a submitted claim. (Mem. Op. & Order (Doc. 24) at 20.)

That leaves only the alleged payment by MedCom to Holloway as possible fraud: Relator describes the payment by MedCom to Holloway as a "commission." (Proposed Am. Compl. (Doc. 26-1) ¶ 16.) Most notably, even with an allegation that MedCom paid Holloway, "there is nothing to describe what that payment was for or, more pointedly, whether the payment was for a prohibited inducement under 42 U.S.C. § 1320a-7b." (Mem. Op. & Order (Doc. 24) at 31-32.)

Relator's conclusory allegations – that Turpin and Holloway admitted some kind of 1099 contractor relationship with a payment structure based upon "volume and value of sales of Integra's products," (see Proposed Am. Compl. (Doc. 26-1) ¶ 16), - are not supported by facts which might plausibly support a fraudulent claim scheme stated with particularity. Nor does Relator plausibly allege claims under the Anti-Kickback Statute based upon products sold via improper inducement.

As a district court in New Jersey explains: "To prove his FCA claim, plaintiff must pass two hurdles. First, plaintiff must establish that defendants violated the AKS through its alleged quid pro quo arrangement with HANJ/HSI. Second,

- 15 -

plaintiff must show that as a result of defendants' AKS violation, defendants received payment from the federal government." United States v. Medco Health Sys., Inc., 223 F. Supp. 3d 222, 227 (D.N.J. 2016). "[T]he key fact plaintiff must establish to prevail on his FCA claim is the link between defendants' alleged quid pro quo arrangement and payment from the federal government." Id. at 228. Any "AKS violation that results in a federal health care payment is a per se false claim under the FCA." United States ex rel. Lutz v. United States, 853 F.3d 131, 135 (4th Cir. 2017) (citing 42 U.S.C. § 1320a-7b(g)); United States ex rel. Kester v. Novartis Pharms. Corp., 43 F. Supp. 3d 332, 363 (S.D.N.Y. 2014) ("[C]ompliance with the AKS is a precondition to the reimbursement of claims, not just a condition of participation; claims tainted by AKS violations are ineligible for reimbursement and, thus, 'false.'").

Under the Anti-Kickback Statute, it is illegal to pay:

any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person —

(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any

- 16 -

> good, facility, service, or item for which
> payment may be made in whole or in part under a
> Federal health care program.

42 U.S.C. § 1320a-7b(b)(2)(A)-(B). In other words, for a payment

to violate the Anti-Kickback Statute, it must be intended to

compensate past referrals or to induce future referrals. See

United States v. Borrasi, 639 F.3d 774, 782 (7th Cir. 2011).

Although Relator alleges generally that he was aware MedCom

was paying 1099 sales reps for "referrals . . . in violation of

the anti-kickback statute," (Proposed Am. Compl. (Doc. 26-1)

¶ 5), Plaintiff's allegations do not establish anything other

than that an Integra product was sold, Holloway submitted a

claim for that Integra product, the VA paid Integra for that

product, Integra paid MedCom, and MedCom paid Holloway. It is

complete speculation as to why MedCom paid Holloway or what

service Holloway may have rendered, whether lawful or unlawful.

Thus, while there are general claims of payments made by MedCom

for referrals, there are no facts alleged which plausibly

support a finding or an inference that any inducements

prohibited by the Anti-Kickback Statute did in fact occur, or

that they were somehow related to any claim submitted to the

United States.

Relator provides no facts to explain whether Holloway's

involvement in the transaction involved something more than

- 17 -

delivery of an available product for sale to a physician:
missing is any fact to suggest this was an unlawful inducement.
No allegations included suggest that the doctors chose an
Integra product as a result of any improper inducement from
Holloway or MedCom. It is undisputed that there were deliveries
of Integra products pursuant to a "buy and bill" model wherein
"claims were 'presented' when the graft was tendered by the
sales representative to be utilized by the physician during the
medical procedure." (Proposed Am. Compl. (Doc. 26-1) ¶ 16.)
Under the facts alleged here, the most that can be concluded is
that Holloway delivered an Integra product for which he
submitted a claim at the time of delivery as required by the buy
and bill system. "Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A
complaint must contain "more than labels and conclusions," Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "naked
assertion[s]" of wrongdoing require some factual enhancement.
Id. Even if Turpin and MedCom created some kind of payment
structure based upon the volume and value of Integra products,
Relator has not alleged any facts to support even an inference
that any bills were submitted resulting from that structure. Nor
is the specific transaction alleged sufficient to state

- 18 -

plausibly and with particularity any fraud in the billing submitted to the VA. For the reasons explained in this court's previous Memorandum Opinion and Order, (Mem. Op. & Order (Doc. 24) at 25-32), this court finds the proposed Amended Complaint is futile as it fails to state a claim for violation of the False Claims Act as a result of sales induced in violation of the Anti-Kickback Statute.

Moreover, the scheme alleged in the proposed Amended Complaint is different from that alleged in the original Complaint. In the original Complaint, Relator alleged that "Relator's employer Integra utilized 1099 nonemployee reps to generate referrals for Medicare/Medicaid and other federal healthcare program patients in violation of the anti-kickback statute," and that these "representatives were paid by Jeff Turpin who owns MedCom LLC in whole or in part for furnishing items covered by federal healthcare programs and received commissions based on the same including PriMatrix and Integra Dermal Replacement Therapy." (Original Compl. (Doc. 1) ¶ 16.) Under that scenario, utilizing 1099 employees to generate "referrals" might suggest something improper in that MedCom and its 1099 contractors were compensated for an inducement rather than a sale. However, as this court previously found, that was not plausibly or particularly alleged. Nevertheless, in a

- 19 -

substantive and unexplained change from the original Complaint, Relator now alleges it was MedCom who utilized 1099 representatives to generate referrals:

> Jeff Turpin was the sole owner of MedCom Carolinas, Inc. that employed independent contractors utilizing IRS Form 1099-MISC to generate referrals for Medicare/Medicaid and other federal healthcare program patients in violation of the antikickback statute. Specifically, these representatives/contractors were paid in whole or in part for furnishing items covered by federal healthcare programs and Jeff Turpin paid the "Medcom" contractors commissions based on the same including when they sold PriMatrix and Integra Dermal Replacement Therapy grafts that were manufactured and produced by Integra.

(Proposed Am. Compl. (Doc. 26-1) ¶ 16.) Notwithstanding Relator's shifting allegations, which will be addressed hereafter, these conflicting allegations suggest a separate problem. In the absence of any description of the relationship between Integra and MedCom, the propriety of the payment between Integra and MedCom, or the basis of the payment by MedCom to any alleged contractor, it is speculation to infer that the alleged payments to Holloway were part of an unlawful inducement scheme.

42 U.S.C. § 1320a-7b(b)(2)(A)-(B) "is aimed at the inducement factor." United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 29 (1st Cir. 1989); United States v. Greber, 760 F.2d 68, 71 (3d Cir. 1985); Feldstein v. Nash Cmty. Health Servs., Inc., 51 F. Supp. 2d 673, 681

- 20 -

(E.D.N.C. 1999); see also Borrasi, 639 F.3d at 782 (joining the
Third, Fifth, Ninth, and Tenth Circuits, and thus not creating a
circuit split, in holding government need only prove inducement
was a motivation for remuneration); United States v. Berkeley
Heartlab, Inc., 225 F. Supp. 3d 460, 468 (D.S.C. 2016)
("Moreover, in FCA cases involving AKS violations, courts have
found scienter where one purpose of the remuneration was to
induce referrals."); Robert Wood Johnson Univ. Hosp., Inc. v.
Thompson, No. Civ.A.04-142(JWB), 2004 WL 3210732, at *6 (D.N.J.
Apr. 15, 2004) (citing the AKS's legislative history and noting
the AKS was aimed at combating wasteful spending, particularly
in the form of payments that are "intended to induce patient
referrals"). Here, Relator fails to describe any claims
submitted to a federal healthcare program which resulted from a
payment to a 1099 contractor for an unlawful referral or
inducement. The only claim specifically described does not
support an inference that any commission paid by MedCom to
Holloway was for purposes of an inducement prohibited by the
Anti-Kickback Statute, as opposed to some other purpose - such
as the actual delivery of the product to the physician. This is
particularly true considering that the proposed Amended
Complaint alleges "accounts such as the VA were face to face
driven accounts whereby their physicians utilized the products

- 21 -

based on its availability provided by the sales representatives," (Proposed Am. Compl. (Doc. 26-1) ¶ 16), an allegation which suggests that rather than any improper inducement, products were purchased based on availability.

A complaint must include facts which allow "the court to draw the reasonable inference that the defendant is liable." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). For the reasons set forth herein and those set forth in this court's Memorandum Opinion and Order, (Doc. 24), this court finds Relator's motion to amend the complaint, (Doc. 26), should be denied as futile.

### D. Denial of Amendment Due to Bad Faith

A district court may deny leave to amend "when . . . there has been bad faith on the part of the moving party." Oroweat Foods, 785 F.2d at 509. Delay alone is an insufficient reason to deny leave to amend unless the delay is accompanied by bad faith. See id. This court finds there has been delay; Relator's original Complaint was pending for a year as a qui tam action. (See Original Compl. (Doc. 1); Doc. 8.) The Complaint was unsealed and Relator chose to proceed with this case without amendment to the Complaint. (Docs. 8, 9.) Defendants filed a motion to dismiss on April 11, 2018, (Doc. 15), to which Relator responded rather than moving to amend the complaint. (See Doc.

- 22 -

20.) A Memorandum Opinion and Order, along with a Judgment dismissing the case were subsequently filed. (Docs. 24, 25.) It was only after the Memorandum Opinion and Order and Judgment were filed that Relator moved to amend the complaint.

Moreover, as described above, in spite of the fact Relator recognized that Count IV did not create a cause of action, and in spite of the fact this court held that Count IV does not create a private cause of action, Relator refiled Count IV as part of his proposed Amended Complaint. Relator's proposed Amended Complaint contains a claim Relator has acknowledged is meritless.

Also, as noted above, in his brief in support of his motion to amend, Relator failed to comply with the local rules and argued facts paraphrased from the proposed Amended Complaint without citation to those facts in the brief as required by LR7.2.

"Parties have an obligation to introduce, at the earliest stage of the litigation as possible, the matters upon which they want to rely in supporting their claim or defense." GSS Props., Inc. v. Kendale Shopping Ctr., Inc., 119 F.R.D. 379, 381 (M.D.N.C. 1988). The failure to do so, especially when it appears the omission was in service to tactical considerations, constitutes bad faith "unless satisfactory explanation [from the

- 23 -

plaintiff] clearly shows otherwise." Id. Here, Relator
apparently withheld facts and matters known to him at the time
of the filing of the original Complaint and failed to introduce
those facts in support of the allegations in the original
Complaint.

Not only did Relator withhold facts, Relator either pled
facts which were not accurate in the original Complaint or has,
without explanation, changed substantive facts, depending upon
inferences that may be drawn. As described previously herein, in
the original Complaint Relator alleged it was Integra who
utilized the 1099 contractors in violation of the Anti-Kickback
Statue:

> Relator's employer Integra utilized 1099 nonemployee
> reps to generate referrals for Medicare/Medicaid and
> other federal healthcare program patients in violation
> of the anti-kickback statute. Specifically, these
> representatives were paid by Jeff Turpin who owns
> MedCom LLC in whole or in part for furnishing items
> covered by federal healthcare programs and received
> commissions based on the same including PriMatrix and
> Integra Dermal Replacement Therapy.

(Original Compl. (Doc. 1) ¶ 16) (emphasis added).

In the proposed Amended Complaint, Relator alleges:

> Jeff Turpin was the sole owner of MedCom Carolinas,
> Inc. that employed independent contractors utilizing
> IRS Form 1099-MISC to generate referrals for
> Medicare/Medicaid and other federal healthcare program
> patients in violation of the anti-kickback statute.
> Specifically, these representatives/contractors were
> paid in whole or in part for furnishing items covered

> by federal healthcare programs and Jeff Turpin paid
> the "Medcom" contractors commissions based on the same
> including when they sold PriMatrix and Integra Dermal
> Replacement Therapy grafts that were manufactured and
> produced by Integra.

(Proposed Am. Compl. (Doc. 26-1) ¶ 5.) (emphasis added). These

facts from the original Complaint appear to have been modified

solely in an effort to avoid dismissal. Relator's changes give

this court substantial concern as to the purpose of the original

filing as well as the modifications set forth in the proposed

Amended Complaint. Alterations for improper purposes constitutes

bad faith:

> Bad faith includes seeking to amend a complaint for an
> improper purpose, Peamon v. Verizon Corp., 581 Fed.
> Appx. 291, 292 (4th Cir. 2014) (holding that it was
> bad faith to seek to amend complaint in order to
> "artificially inflate . . . damages in order to obtain
> subject matter jurisdiction"), or seeking leave to
> amend after repeated "pleading failures," U.S. ex rel.
> Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451,
> 461 (4th Cir. 2013) (holding that the district court
> did not abuse its discretion in denying plaintiff
> leave to file a fourth amended complaint after
> repeated prior dismissals for failure to sufficiently
> plead his claim).

Wilkins v. Wells Fargo Bank, N.A., 320 F.R.D. 125, 127 (E.D. Va.

2017). It appears to this court that the conduct evidenced here

– changing substantive facts from one filing to the next and

pursuing claims with the knowledge they are not supported by law

– cannot be classified as good faith conduct. This court

- 25 -

therefore finds the proposed Amended Complaint is drafted in bad faith.

Relator's contentions that this court "previously and undoubtedly misunderstood" certain factual allegations, (Doc. 26 at 1), and "misunderstood several material facts," (id. at 5), is not persuasive. Relator appears to be the individual that confused "MedCom Carolinas, Inc." and "MedCom LLC" in the original Complaint; that point of confusion was specifically addressed in the Memorandum Opinion and Order. (Mem. Op. & Order (Doc. 24) at 30 ("Relator has introduced further confusion into the pleadings by referring to a non-defendant entity, MedCom LLC.").) Relator also appears to be the individual who failed to accurately identify on whose behalf the 1099 contractors may have acted; in the original Complaint, Relator alleged that Integra used 1099 contractors to generate referrals, only to reverse that position in the proposed Amended Complaint and allege it was MedCom who used 1099 contractors to generate referrals. Finally, it was Relator who brought a direct claim under the Anti-Kickback Statute knowing that claim was not supported at law. Refiling an identical claim with full knowledge it was unmeritorious is not tenable.

## II.  <u>CONCLUSION</u>

For the aforementioned reasons, Plaintiff/Relator's Motion to Alter or Amend the Judgment and Leave to File an Amended Complaint, (Doc. 26), is **DENIED**.

This the 16th day of March, 2021.

_____
United States District Judge

Case 1:17-cv-00034-WO-LPA   Document 30   Filed 03/16/21   Page 27 of 27